**EXHIBIT A**

**INDEX OF ALL DOCUMENTS FILED IN STATE COURT ACTION**

| EXHIBIT | DATE FILED | DOCUMENT TITLE |
|---------|------------|----------------|
| A-1 | | STATE COURT DOCKET SHEET |
| A-2 | 07/27/23 | PLAINTIFF'S ORIGINAL PETITION |
| A-3 | 07/27/23 | PROPOSED TEMPORARY RESTRAINING ORDER |
| A-4 | 07/27/23 | SIGNED TEMPORARY RESTRAINING ORDER |

https://reco...

## Case Information

# TIMS, CLINT VS. GUILD MORTGAGE COMPANY

111736

| Location | Case Category | Case Type |
|----------|--------------|-----------|
| Ellis County - District Clerk | Civil - Contract | Debt/Contract - Other |

## Parties [2]

| Type | Name | Nickname/Alias | Attorneys |
|------|------|----------------|-----------|
| Plaintiff | TIMS, CLINT | | NEWARK, III, ROBERT C. |
| Defendant | GUILD MORTGAGE COMPANY | | |

## Events [3]

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 7/27/2023 | Filing | Petition | Proposed TRO | Proposed TRO.pdf |
| 7/27/2023 | Filing | Petition | Petition | Petition with Exhibits.pdf |
| 7/27/2023 | Filing | E-filed Attorney | SIGNED TRO | |

© 2023 Tyler Technologies, Inc. | All Rights Reserved
Version: 2023.6.0.46





111736

**Cause No:** _____

| | | |
|---|---|---|
| **CLINT TIMS,** | ) | **IN THE DISTRICT COURT** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | 40TH |
| **v.** | ) | _____ **JUDICIAL DISTRICT** |
| | ) | |
| **GUILD MORTGAGE COMPANY,** | ) | |
| **LLC,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | **OF ELLIS COUNTY, TEXAS** |

<u>**PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, PERMANENT INJUNCTION, AND REQUEST FOR DISCLOSURES**</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, CLINT TIMS, hereinafter called Plaintiff, by and through his attorney, Robert C. Newark, III, and files this Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction and in support thereof would show unto the Court the following:

**DISCOVERY CONTROL PLAN**

1.      The Plaintiff herein intends to conduct discovery under Level 3 of the Texas Rules of Civil Procedure.

**PARTIES**

2.      Plaintiff, CLINT TIMS, is an individual that resides in ELLIS COUNTY, Texas.

3.      Defendant, GUILD MORTGAGE COMPANY, LLC, (hereinafter referred to as "Lender") is a foreign entity doing business in in ELLIS COUNTY, State of Texas.  Lender may



EXHIBIT
A-2

be served with process through its registered agent at any address where its registered agent may be found.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the controversy because the claims asserted in this Petition, arose, in whole or in part, in ELLIS COUNTY, Texas and the amount in controversy exceeds the minimal jurisdictional limits of the court.

5.      This Court has personal jurisdiction over the Defendant because the acts and omissions complained of herein occurred in Texas, the Defendant does and/or did do business in the State of Texas, has committed a tort, in whole or in part in Texas, is a resident and citizen of Texas, has minimal contacts with the State of Texas during the period of time complained of herein.

6.      Venue is properly laid in ELLIS COUNTY, Texas, because all or a substantial part of Plaintiff's cause of action arose in ELLIS COUNTY, Texas.

## NATURE OF SUIT

7.      This is a suit to enjoin and refrain a foreclosure sale proceeding scheduled by Defendant, for Tuesday, August 1, 2023, between 10:00 am and 4:00 pm at the location designated by the county clerk.  See Exhibit A – Notice of Sale which is supposedly sent to Plaintiff.

8.      In addition to the aforementioned request for the extraordinary relief to abate the foreclosure proceeding, Plaintiff brings this lawsuit against Defendant alleging breach of contract, actual damages and attorney fees.

## EXISTENCE OF CONTRACT AND PERFORMANCE

9.      On or about September 8, 2017, Plaintiff entered into a written contract with Defendant, for the purchase of a house and lot located 8441 FM 1181, Ennis, TX  75119.   See Exhibit B – Deed of Trust.

10.      The original principal of the contract was $170,336.00.

## BREACH OF CONTRACT

11.      The elements of a breach of contract action are:  (1) the existence of a valid contract; (2) performed or tendered performance by the Plaintiff; and (3) breach by the Defendant.

12.      Plaintiff alleges that Defendant failed to comply with the terms of the Deed of Trust.

13.      The paragraphs which Lender and/or Servicer breached are paragraphs 14, 18, and 22.

14.      The Defendant has failed to performed these actions and others under the Deed of Trust and Note.  Specifically, Defendant never provided the notices required in paragraph 22. Those notices include but are not limited to the Notice of Default, Notice of Acceleration, and Notice of Sale.

15.      The Defendant failed to follow the foregoing steps and thus breached the contract with Plaintiff.

16.      As a result, Defendant has breached the written contractual agreements and covenants of the note by wrongful applying these charges over and above Plaintiff's principal loan balance.

3

17.     As a result of Defendant's breach, Plaintiff has suffered harm as he has incurred additional charges to his loan balance and escrow account and are continuing to incur them to the present.

### ALL PARAGRAPHS INCORPORATED

18.     Each of the proceedings and succeeding paragraphs are incorporated as part of the following cause of action.

### ATTORNEY'S FEES

19.     Plaintiffs are entitled to recover reasonable and necessary attorney fees pursuant to Tex. Civ. Prac. & Rem. Code Sec. 37.009 and pursuant to Tex. Civ. Prac. & Rem. Code Chapter 38 in this action for the breach of contract as authorized in Sec. 38.001(8).

### DISCOVERY – DISCLOSURES - TRCP 194.2

20.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that Defendant disclose the information and material described in Rule 194.2 within 50 days of service.

### NOTICE – TRCP 193.7

21.     Plaintiffs hereby put Defendant on notice that Plaintiffs intend to use Defendant's discovery responses as evidence at trial in accordance with such rights and privileges established by Texas Rules of Civil Procedure 193.7.

### RULE 47 DECLARATIONS

22.     By reason of all the above and foregoing it has become necessary to bring this suit for which it is now brought in a just and reasonable sum greatly in excess of the jurisdictional limits of this Honorable Court, together with all interest, pre and post judgment to which Plaintiff is entitled by law.     As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff's

counsel states that the damages sought are in an amount within the jurisdictional limits of this Court.  As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks monetary relief less than $250,000.00.  Plaintiff also seeks injunctive relief.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

23.     Defendant, GUILD MORTGAGE COMPANY, LLC should not be allowed to finalize foreclosure proceedings including transfer or any other disposition of the property, or taking possession or exercise any control over the property located 8441 FM 1181, Ennis, TX 75119.

24.     Defendant, GUILD MORTGAGE COMPANY, LLC has failed to follow state law notice provisions of the Texas Property Code and is not entitled to proceed with the sale of the property through wrongful foreclosure.

25.     Plaintiff will suffer irreparable injury if Defendant, GUILD MORTGAGE COMPANY, LLC is not enjoined from effectuating the wrongful foreclosure sale of 8441 FM 1181, Ennis, TX  75119.

26.     There is a substantial likelihood that Plaintiff will succeed on the merits of its lawsuit.

27.     The threatened harm to Plaintiff outweighs the harm of a preliminary injunction would inflict on the Defendant.

28.     In addition, the property in question affords Plaintiff a substantial equity amounts over and above the alleged debt owed to the Defendant.

29.     Issuance of a preliminary injunction is in the public interest.  The granting of a preliminary injunction would maintain the status quo and retains one of the most significant

assets of the Plaintiff.   To deny the preliminary injunction would be to unjustly enrich the Defendant and extinguish the Plaintiff substantial equity interest in its property.

30.    Plaintiff is willing to post a bond in an amount the court deems appropriate.

31.    Plaintiff asks the court to set his application for preliminary injunction for a hearing at the earliest possible time, and after hearing the application, issue a preliminary injunction against Defendant.

## MOTION FOR TEMPORARY RESTRAINING ORDER

32.    All allegations are incorporated herein.

33.    The Plaintiff is entitled to a Temporary Restraining Order to restrain further transfer, or any other disposition of the property or taking possession or exercising any contract over the property as follows:

a.    Plaintiff will incur significant irreparable injury and loss.   The threaten damage which would be incurred would be significant and substantial as specified above and incorporated herein by reference.

b.    There is substantial likelihood of success on the merits as specified within.

c.    The threaten harm outweighs the harm a temporary restraining order would inflict on the Defendant specified within and incorporated herein by reference.

d.    The Temporary Restraining Order would serve the public interest as specified above, incorporated by reference.

e.    Plaintiff is willing to post a bond in the amount the court deems appropriate.

34.    For these reasons, Plaintiff asks the Court to issue a temporary restraining order preventing and refraining Defendant, its attorneys, agents, successors and/or assigns from

6

consummating, continuing or effectuating any transaction, transferring the real property located 8441 FM 1181, Ennis, TX   75119 , perfecting its lien or security interest in the property, exercising any dominion or control over the real property, or attempting to take possession of the property, and to set the request for preliminary injunction for hearing at the earliest possible time.

35.     An Affidavit that proves the allegations in the Application for Injunction Relief is attached and incorporated by reference.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

a.      Invalidate the foreclosure sale that is scheduled for August 1, 2023

b.      Issue an immediate temporary restraining order preventing and refraining Defendant, its attorneys, agents, successors and/or assigns from consummating, continuing or effectuating any transaction, transferring the real property located 8441 FM 1181, Ennis, TX 75119, perfecting its lien or security interest in the property, exercising any dominion or control over the real property, or attempting to take possession of the property,

c.      Following hearing and notice to Defendant, issue a temporary injunction to prevent Defendant and its agents and employees from proceeding with the foreclosure sale of Plaintiff's property during the pendency of this cause of action in order to maintain the status quo herein;

d.      Order the Defendant to be cited to appear and answer within and that upon final hearing, this Court grant declaratory judgment that no foreclosure sale of Plaintiff's house be validated during the pendency of this cause and enter a permanent injunction to prevent

7

Defendant, its employees or agents from foreclosure validation on the property; and evicting Plaintiff from his property;

e.     The Plaintiff be granted his damages, costs, and reasonable attorney fees, and any other relief at law or in equity to which they may be entitled.

RESPECTFULLY SUBMITTED,
A Newark Firm
1341 W. Mockingbird Lane, Ste 600W
Dallas, Texas 75247
Telephone:     (866)230-7236
Facsimile:     (888)316-3398
Email:         robert@newarkfirm.com

By:     /s/Robert C. Newark, III_____ _
Robert C. Newark, III
Texas Bar No. 24040097
Oklahoma Bar No. 21992
ATTORNEY FOR PLAINTIFF

Unsworn Declaration Made Under Penalty of Perjury

I make this unsworn declaration under penalty of perjury in place of verification as

allowed by Texas Civil Practices and Remedies Code Section 132.001.

1.   I, __Clint Tims_____, is the Plaintiff in this matter.

2.   My date of birth is _03/21/1966_____

3.   My address is _8441 FM 1181 Ennis TX 75129_____

4.   I declare under penalty of perjury that: I have personal knowledge of all the facts

set forth in the PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY

RESTRAINING ORDER, TEMPORARY INJUNCTION, PERMANENT INJUNCTION, AND

REQUEST FOR DISCLOSURES and hereby state that every factual statement set forth therein is

true and correct.

Signed under penalty of perjury in _Ellis____ County, Texas.

DocuSigned by:

_Clint Tims_____
A72BC12501134A3...

Declarant



**Lawyers Title** GF# _190149170012b_

_$94.00_

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# DEED OF TRUST

After recording please return to:
GUILD MORTGAGE COMPANY -
ATTN: DMD

5898 COPLEY DRIVE
SAN DIEGO, CA  92111

———————————————————————*[Space Above This Line For Recording Data]*————————————————————————

Loan No.: 218-2003207

FHA Case No.
5111887584703

MIN: 100019921820032070

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **September 8, 2017**, together with all Riders to this document.

**(B) "Borrower"** is KAREN L. TIMS, A MARRIED WOMAN AND CLINT WAYNE TIMS, HER HUSBAND. Borrower is the grantor under this Security Instrument.

**(C) "Lender"** is GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION. Lender is a **corporation** organized and existing under the laws of **CALIFORNIA**. Lender's address is **5898 COPLEY DRIVE, SAN DIEGO, CA  92111**. Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D) "Trustee"** is CHRIS PEIRSON. Trustee's address is **4400 ALPHA ROAD, DALLAS, TX  75244**.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security**

---

Texas Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.                    Page 1 of 17

Closing

54301TX 02/02 Rev. 10/15
©2002-2015, The Compliance Source, Inc.



*2 1 8 - 2 0 0 3 2 0 7 *

**Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **September 8, 2017**. The Note states that Borrower owes Lender **One Hundred Seventy Thousand Three Hundred Thirty Six and 00/100ths** Dollars (U.S. **$170,336.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2047**.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

|  |  |  |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |  |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.



**(S) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  |  |  |  |
|---|---|---|---|
| **County** | of | **ELLIS** | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**BEING A TRACT OR PARCEL OF LAND SITUATED IN ELLIS COUNTY, TEXAS, AND BEING PART OF THE A. DE LA GARZA SURVEY ABSTRACT 2 AND BEING PART OF THAT TRACT OF LAND CONVEYED TO WILLIAM CHARLES HARRISON BY DEED RECORDED IN VOLUME 2428 PAGE 1849 THE OFFICIAL PUBLIC RECORDS OF ELLIS COUNTY AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS; SEE ATTACHED EXHIBIT "A"**

which currently has the address of **8441 FM 1181**

|  |  |  |
|---|---|---|
| | [Street] | |
| **ENNIS** | **, Texas** | **75119** |
| [City] | | [Zip Code] |

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall

---



also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this

**Texas Deed of Trust**
FHA MERS Modified
The Compliance Source, Inc.     Page 4 of 17     **Closing**

54301TX 02/02 Rev. 10/15
©2002-2015, The Compliance Source, Inc.



Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the



Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such



policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the



insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.



**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the

---



Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted



limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent,



Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of



insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without**



further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.



Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☒    **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐    **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐    **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐    **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the**



balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
KAREN L. TIMS                          -Borrower

_____ (Seal)
CLINT WAYNE TIMS                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

## ACKNOWLEDGMENT

State of Texas                        §
                                      §
County of Ellis                       §

This instrument was acknowledged before me on September 8, 2017   by KAREN L. TIMS.

_____
Signature of Officer

TERRILYN MILLER
Notary ID # 125081445
My Commission Expires
November 30, 2020

_____
Printed Name

_____
Title of Officer

(Seal)                                My Commission Expires:

---



## ACKNOWLEDGMENT

State of *Texas*                                        §
County of *Ellis*                                       §
                                                        §

This instrument was acknowledged before me on *September 8, 2017* by **CLINT WAYNE TIMS.**



Signature of Officer

_____

Printed Name

_____

Title of Officer

(Seal)                                  My Commission Expires:

> TERRILYN MILLER
> Notary ID # 125081445
> My Commission Expires
> November 30, 2020

**Loan Originator Organization: GUILD MORTGAGE COMPANY, NMLSR ID: 3274**
**Individual Loan Originator's Name: VANESSA NICOLE ZMOLIK, NMLSR ID: 373756**

---

Texas Deed of Trust                                                              Closing
FHA MERS Modified
The Compliance Source, Inc.          Page 17 of 17          54301TX 02/02 Rev. 10/15
                                                           ©2002-2015, The Compliance Source, Inc.

*218-2003207*

EXHIBIT "A"

# LEGAL DESCRIPTION

**Order No.:**   1901491700126

BEING a tract or parcel of land situated in Ellis County, Texas, and being part of the A. de la Garza Survey Abstract 2 and being part of that tract of land conveyed to William Charles Harrison by deed recorded in Volume 2428 Page 1849 the Official Public Records of Ellis County and being more particularly described as follows;

BEGINNING at a point for corner at a 1/2" iron rod set in the northerly line of F. M. 1181 at the southwesterly corner of that 1.25 acre tract conveyed to William Charles Harrison by deed recorded in Volume 2335 Page 1695 of the Official Public Records of Ellis County:

THENCE in a westerly direction along the northerly line of F. M. 1181 and along a curve to the left whose chord bears North 80° 59' 06" West and having a radius 5774.58 feet, a central angle of 2° 01' 48" and an arc length of 204.58 feet to the end of said curve to the left at a 1/2" iron rod set;

THENCE North 82° 00' West (record bearing) along the northerly line of F. M. 1181 a distance of 383.54 feet to a point for corner at a 1/2" iron rod set;

THENCE North 10° 59' 31" East a distance of 542.82 feet to a point for corner at a 1/2" iron rod set;

THENCE North 83° 58' 24" East a distance of 175.51 feet to a point for corner at a 1/2" iron rod set;

THENCE North 51° 41' 59" East a distance of 212.35 feet to a point for corner at a 1/2" iron rod set;

THENCE South 20° 06' 37" East a distance of 544.72 feet to an angle point at a 1/2" iron rod set;

THENCE South 11° 02' 42" West along the westerly line of said Harrison 1.25 acre tract a distance of 261.67 feet to THE PLACE OF BEGINNING and containing 7.5047 acres.

NOTE:  COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.

Any provision herein which restricts the sale, rental, or use of this described real property because of color or race is invalid and unenforceable under federal law

STATE   OF   TEXAS       COUNTY   OF   ELLIS
I hereby certify this instrument was filed on the date and time stamped herein and was duly recorded in the volume and page of the OFFICIAL PUBLIC RECORDS of Ellis County Texas and stamped hereon

*Cindy Polley*

COUNTY CLERK ELLIS COUNTY, TEXAS

FILED FOR RECORD - ELLIS COUNTY, TX
INST NO. 1726155
on Sep 13, 2017 at 01:10:00 PM

POSTED

JUN 0 8 2023

COUNTY CLERK
ELLIS COUNTY, TEXAS     **NOTICE OF SUBSTITUTE TRUSTEE'S SALE**

SCANNED

**167**

**ELLIS County**
**Deed of Trust Dated:** September 8, 2017
**Amount:** $170,336.00
**Grantor(s):** CLINT WAYNE TIMS and KAREN L TIMS
**Original Mortgagee:** GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION
**Current Mortgagee:** GUILD MORTGAGE COMPANY LLC
**Mortgagee Address:** GUILD MORTGAGE COMPANY LLC, 5887 COPLEY DR. FLOORS 1, 3, 4, 5 and 6, SAN DIEGO, CA 92111
**Recording Information:** Document No. 1726155
**Legal Description:** SEE EXHIBIT "A"

**Date of Sale:** August 1, 2023 between the hours of 10:00 AM and 1:00 PM.
**Earliest Time Sale Will Begin:** 10:00 AM
**Place of Sale:** The foreclosure sale will be conducted at public venue in the area designated by the ELLIS County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

BOB DICKERSON OR TERRY WATERS, BRUCE MILLER, CRAIG MUIRHEAD, WENDY LAMBERT, DAVID RAY, THOMAS LESTER, KINNEY LESTER, ASHLEE LUNA, RAMIRO CUEVAS, TIM LEWIS, BRENDA WIGGS, GUY WIGGS, DONNA STOCKMAN, DAVID STOCKMAN, RUSSELL STOCKMAN, MICHELLE SCHWARTZ, DENISE BOERNER, JOSHUA SANDERS, MATTHEW HANSEN, ANGIE USELTON, AURORA CAMPOS, DANA KAMIN, MERYL OLSEN, MISTY MCMILLAN, TONYA WASHINGTON, CONRAD WALLACE, JANET PINDER, BRANDY BACON, JAMIE DWORSKY, BOB FRISCH, VICKI RODRIGUEZ, JANICE STONER, JODI STEEN, JO WOOLSEY, JENNYFER SAKIEWICZ, JACK BECKMAN OR KATHY ARRINGTON have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust. The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. §§ 3901 et seq.), and state law, including Section 51.015 Texas Property Code. **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.**

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

Anthony Abee Garcia, ATTORNEY AT LAW
HUGHES, WATTERS & ASKANASE, L.L.P.
1201 Louisiana, SUITE 2800
Houston, Texas 77002
Reference: 2018-001986

Printed Name: Donna Stockman

c/o Auction.com, LLC
1 Mauchly
Irvine, California 92618

EXHIBIT "A"

## LEGAL DESCRIPTION

**Order No.:**   1901491700126

BEING a tract or parcel of land situated in Ellis County, Texas, and being part of the A. de la Garza Survey Abstract 2 and being part of that tract of land conveyed to William Charles Harrison by deed recorded in Volume 2428 Page 1849 the Official Public Records of Ellis County and being more particularly described as follows;

BEGINNING at a point for corner at a 1/2" iron rod set in the northerly line of F. M. 1181 at the southwesterly corner of that 1.25 acre tract conveyed to William Charles Harrison by deed recorded in Volume 2335 Page 1695 of the Official Public Records of Ellis County:

THENCE in a westerly direction along the northerly line of F. M. 1181 and along a curve to the left whose chord bears North 80° 59' 06" West and having a radius 5774.58 feet, a central angle of 2° 01' 48" and an arc length of 204.58 feet to the end of said curve to the left at a 1/2" iron rod set;

THENCE North 82° 00' West (record bearing) along the northerly line of F. M. 1181 a distance of 383.54 feet to a point for corner at a 1/2" iron rod set;

THENCE North 10° 59' 31" East a distance of 542.82 feet to a point for corner at a 1/2" iron rod set;

THENCE North 83° 58' 24" East a distance of 175.51 feet to a point for corner at a 1/2" iron rod set;

THENCE North 51° 41' 59" East a distance of 212.35 feet to a point for corner at a 1/2" iron rod set;

THENCE South 20° 06' 37" East a distance of 544.72 feet to an angle point at a 1/2" iron rod set;

THENCE South 11° 02' 42" West along the westerly line of said Harrison 1.25 acre tract a distance of 261.67 feet to THE PLACE OF BEGINNING and containing 7.5047 acres.

Cause No: _____

| | | |
|---|---|---|
| **CLINT TIMS,** | ) | **IN THE DISTRICT COURT** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | 40TH |
| **v.** | ) | _____ **JUDICIAL DISTRICT** |
| | ) | |
| **GUILD MORTGAGE COMPANY,** | ) | |
| **LLC,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | **OF ELLIS COUNTY, TEXAS** |

## <u>TEMPORARY RESTRAINING ORDER</u>

On this date, the Application for a Temporary Restraining Order filed herein by Plaintiff, Clint Tims, (hereinafter "Plaintiff") that was incorporated into and pleaded in the Plaintiff's Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (hereafter **"Petition"),** in this cause, was heard and considered before this Court.

Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of counsel at the hearing. IT CLEARLY APPEARS**:**

1.     That unless Defendant, GUILD MORTGAGE COMPANY, LLC, and/or their various agents, employees, attorneys, trustees, and substitute trustees (hereinafter "Defendant") are immediately enjoined and restrained, Defendant will proceed with a foreclosure sale of the Plaintiff's property, identified and described in the Petition, and Plaintiff will suffer an immediate

Temporary Restraining Order

**EXHIBIT
A-3**

Page 1

Copy from re:SearchTX

and irreparable harm and will have no adequate remedies under the law, and Defendant will commit the foregoing before notice and a hearing on Plaintiff's Application for Temporary Injunction.

2.    Plaintiff will suffer irreparable harm if Defendant, GUILD MORTGAGE COMPANY, LLC, and/or their various agents, employees, attorneys, trustees, and substitute trustees are not restrained immediately because Plaintiff will lose fee simple title and ownership of the property, which is unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final and equitable relief.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant, GUILD MORTGAGE COMPANY, LLC, and/or their various agents, employees, attorneys, trustees, and substitute trustees, are hereby ORDERED to immediately cease and desist from attempting or proceeding with any foreclosure sale of Plaintiff's property identified and described in the Petition, and which is commonly known as 8441 FM 1181, Ennis, TX  75119.  Defendant is hereby immediately enjoined from the date of entry of this order until fourteen (14) days hereafter, or until further order of this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiff's Application for Temporary Injunction be heard on the _____ day of August, 2023, at _____ o'clock ____.M. in the courtroom of the _____ District Court of ELLIS COUNTY located in the ELLIS COUNTY Courthouse, 109 S. Jackson St, Waxahachie, TX 75165, and that Defendant is commanded to appear at that time and are afforded an opportunity to explain why a temporary injunction should not be issued against said Defendant.

The Clerk of the above-entitled court shall issue a notice of entry of a temporary restraining order in conformity with the law and terms of this order, to include a copy of this order, until the

Temporary Restraining Order

Page 2

Copy from re:SearchTX

filing by Plaintiff of the bond hereinafter set.

This Order shall not be effective until Plaintiff deposit with ELLIS COUNTY District Clerk a bond in the amount of $100.00, in due conformity with applicable law.  The bond may be in the form of cash, a cashier's check, attorney check, surety bond, or applied against any funds being held by the said District Clerk.

Signed and Entered on this the _____day of _____, 2023 at_____:_____._.

_____
JUDGE PRESIDING

CC:

Approved as to form:

/s/Robert C. Newark, III_____
Robert C. Newark, III
Texas Bar No. 24040097
Oklahoma Bar No. 21992
A Newark Firm
1341 W. Mockingbird Lane, Ste 600W
Dallas, Texas 75247
Telephone:      (866)230-7236
Facsimile:      (888)316-3398
Email:          robert@newarkfirm.com
ATTORNEY FOR PLAINTIFF

Temporary Restraining Order

Copy from re:SearchTX

111736

Cause No: _____

ORIGINAL

FILED FOR RECORD
2023 JUL 27  PM 3:09
MELANIE REED
DISTRICT CLERK
ELLIS COUNTY, TX

| | | |
|---|---|---|
| CLINT TIMS, | ) | IN THE DISTRICT COURT |
| | ) | |
| | ) | |
| Plaintiff, | ) | 40TH |
| v. | ) | _____ JUDICIAL DISTRICT |
| | ) | |
| GUILD MORTGAGE COMPANY, | ) | |
| LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | OF ELLIS COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER

On this date, the Application for a Temporary Restraining Order filed herein by Plaintiff, Clint Tims, (hereinafter "Plaintiff") that was incorporated into and pleaded in the Plaintiff's Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (hereafter **"Petition"**), in this cause, was heard and considered before this Court.

Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of counsel at the hearing.  IT CLEARLY APPEARS:

1. That unless Defendant, GUILD MORTGAGE COMPANY, LLC, and/or their various agents, employees, attorneys, trustees, and substitute trustees (hereinafter "Defendant") are immediately enjoined and restrained, Defendant will proceed with a foreclosure sale of the Plaintiff's property, identified and described in the Petition, and Plaintiff will suffer an immediate

Temporary Restraining Order

Page 1

**EXHIBIT A-4**

and irreparable harm and will have no adequate remedies under the law, and Defendant will commit the foregoing before notice and a hearing on Plaintiff's Application for Temporary Injunction.

2.    Plaintiff will suffer irreparable harm if Defendant, GUILD MORTGAGE COMPANY, LLC, and/or their various agents, employees, attorneys, trustees, and substitute trustees are not restrained immediately because Plaintiff will lose fee simple title and ownership of the property, which is unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final and equitable relief.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant, GUILD MORTGAGE COMPANY, LLC, and/or their various agents, employees, attorneys, trustees, and substitute trustees, are hereby ORDERED to immediately cease and desist from attempting or proceeding with any foreclosure sale of Plaintiff's property identified and described in the Petition, and which is commonly known as 8441 FM 1181, Ennis, TX  75119.  Defendant is hereby immediately enjoined from the date of entry of this order until fourteen (14) days hereafter, or until further order of this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiff's Application for Temporary Injunction be heard on the ____*10*____ day of August, 2023, at ___*11:00*___ o'clock *A*.M. in the courtroom of the *40* District Court of ELLIS COUNTY located in the ELLIS COUNTY Courthouse, 109 S. Jackson St, Waxahachie, TX 75165, and that Defendant is commanded to appear at that time and are afforded an opportunity to explain why a temporary injunction should not be issued against said Defendant.

The Clerk of the above-entitled court shall issue a notice of entry of a temporary restraining order in conformity with the law and terms of this order, to include a copy of this order, until the

Temporary Restraining Order

filing by Plaintiff of the bond hereinafter set.

This Order shall not be effective until Plaintiff deposit with ELLIS COUNTY District Clerk

a bond in the amount of $100.00, in due conformity with applicable law.  The bond may be in the

form of cash, a cashier's check, attorney check, surety bond, or applied against any funds being held

by the said District Clerk.

JUL 2 7 2023

Signed and Entered on this the _____ day of _____, 2023 at _2:57pM_

JUDGE PRESIDING

CC:

Approved as to form:

/s/Robert C. Newark, III
Robert C. Newark, III
Texas Bar No. 24040097
Oklahoma Bar No. 21992
A Newark Firm
1341 W. Mockingbird Lane, Ste 600W
Dallas, Texas 75247
Telephone:     (866)230-7236
Facsimile:      (888)316-3398
Email:          robert@newarkfirm.com
ATTORNEY FOR PLAINTIFF

*☆ SEE ATTACHED
SUPPLEMENTAL ORDERS.*

Temporary Restraining Order

Page 3

# CAUSE NO. 111736

## <u>Supplemental Orders</u>

**IT IS FURTHER ORDERED** that:

1. The hearing on Temporary Injunction will be conducted in-person.

2. The Attorneys who appear must have a detailed and conversant understanding of the factual position of their respective clients.

3. The Plaintiff must be present for the hearing.

4. A corporate representative must also be present for the hearing.

5. Plaintiff and Plaintiff's Counsel are required to bring to the hearing – funds, certified funds, or a check drawn on an Attorney Trust Account (payable to the court registry) equal to – one monthly payment of principal and interest, plus one month's pro rata share of the annual real property taxes and homeowner's insurance.